# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. A. No. _____ |
| | § | |
| ADAN BARNARD, COLIN CALLAWAY, | § | |
| TODD MILLER, and OPIFEX LLC, | § | |
| | § | |
| *Defendants*. | § | |

---

## VERIFIED ORIGINAL COMPLAINT AND APPLICATION
## FOR PRELIMINARY AND PERMANENT INJUNCTION

---

Plaintiff H&E Equipment Services, Inc. ("H&E") files this Verified Complaint for Preliminary and Permanent Injunctions, Breach of Contract, and Money Damages against Defendants Adan Barnard, Colin Callaway, and Todd Miller (collectively, "Individual Defendants"), and Opifex LLC ("Opifex") (Individual Defendants and Opifex collectively referred to as "Defendants").

As alleged below, Individual Defendants misappropriated H&E's trade secrets when they joined H&E's competitor, Opifex, and used H&E's confidential pricing lists and rates—obtained by emailing H&E's pricing lists to their personal emails while still employed by H&E—to subsequently solicit H&E's customers and employees for Opifex's benefit, in direct violations of their restrictive covenants with H&E and applicable law. In support of the relief it requests, H&E respectfully shows the Court as follows:

**I.**
**NATURE OF THE ACTION**

1.      This action asserts claims against Defendants Adan Barnard, Colin Callaway, Todd Miller and their new employer, Opifex, for breach of contract, tortious interference with existing contracts and business relationships, and misappropriation of trade secrets, among other things. All causes of action arise from Individual Defendants' unlawful and unauthorized possession and use of H&E's confidential and proprietary information, and their solicitation of H&E customers and employees by and through Opifex (as Opifex's agents), a competing heavy machinery and construction equipment rental company, in direct violation of their restrictive covenants with H&E and applicable law.

2.      Defendants continue to possess H&E's confidential and trade secret information, causing H&E irreparable harm and significant damages. To cease and prevent ongoing irreparable harm from Defendants' conduct, H&E seeks preliminary and permanent injunctive relief, as well as monetary damages, attorneys' fees, and other available relief.

**II.**
**PARTIES**

3.      Plaintiff H&E Equipment Services, Inc. is a Delaware company with its principal place of business in Louisiana.  It is authorized and doing business in the State of Texas.

4.      Defendant Adan Barnard is an individual residing in Texas whose last known address is 1049 Southwark Drive, Justin, Texas 76247. Barnard may be served with process at his home, or wherever he may be found.

5.      Defendant Colin Callaway is an individual residing in Texas whose last known address is 7415 Mustang Hill Lane, Spring, Texas 77389. Callaway may be served with process at his home, or wherever he may be found.

6.      Defendant Todd Miller is an individual residing in Texas whose last known address is 1515 South Lamar, Apartment #1445, Austin, Texas 78704. Miller may be served with process at his home, or wherever he may be found.

7.      Defendant Opifex LLC is a Delaware corporation with its principal place of business located in Buda, Texas. Opifex does business throughout Texas, including the Dallas-Fort Worth metroplex, Houston, San Antonio, Austin, and College Station. Opifex, like H&E, rents construction equipment and heavy machinery to contractors, and is a direct competitor of H&E. Defendant Opifex may be served through its registered agent, Joseph Thomas Vaughn III, at 5223 Holly, Bellaire, Texas 77401.

**III.**
**VENUE AND JURISDICTION**

8.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because H&E brings a claim under the laws of the United States. Specifically, H&E alleges a claim against Defendants for violation of federal law, including the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* This Court also has supplemental and pendent jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Callaway is a resident of Texas domiciled in Harris County and a significant portion of the event giving rise to the claims took place in this District.

**IV.**
**BACKGROUND**

10.      Founded in 1961, H&E is one of the largest and fastest-growing equipment rental companies in the country, providing new, used and rental earthmoving, construction, industrial, material handling heavy equipment, parts, and services in markets across the United States.

11.     H&E faces significant competition and exerts great effort and expense in identifying and marketing to potential customers and maintaining their customers for repeat sales, rentals, and services.

12.     In doing so, H&E has developed valuable confidential and proprietary business information, including, but not limited to, confidential customer and target lists, purchasing histories and service schedules, marketing plans and information, consumer data, referral sources, vendor and business affiliate supplier data, and pricing and revenue information, as well as employee salary information (collectively the "Confidential Information").

13.     H&E relies on its Outside Sales Representatives to sell and rent equipment to its customers. H&E's Outside Sales Representatives closely associate with, and have repeated contact with, H&E's customers. H&E's customers tend to directly associate H&E's business with the Outside Sales Representatives.

14.     Opifex is a direct competitor of H&E. Opifex, like H&E, is a heavy equipment rental company serving the construction industry, providing earthmoving and construction equipment. Like H&E, Opifex rents new forklifts, aerial lifters, excavators, trucks, and various site services and parts to customers in Texas. Opifex has locations in the Dallas-Fort Worth metroplex, Houston, San Antonio, Austin, and College Station.

15.     Opifex's website clearly establishes that it is a direct competitor of H&E:





16.     Individual Defendants all worked as Outside Sales Representatives for H&E. In their roles as Outside Sales Representatives, Individual Defendants represented H&E and, among other duties, were responsible for developing relationships on behalf of H&E with existing and prospective customers and members of the community for the purpose of gaining business for H&E, for which they were each paid a salary and commissions. Individual Defendants had

significant and consistent interaction with H&E's customers. Specifically, Individual Defendants were responsible for business development and maintenance of customer relationships. Individual Defendants' job duties required them to interface with customers to keep them updated as to project status. In addition, they participated in sales calls, customer visits, handled customer issues, strategized marketing, development, and competitive market pricing strategies.

17.     Individual Defendants each signed and executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement (collectively, the "Agreement"), as is standard practice for that position across the industry. True and correct copies of the Agreements are attached hereto as **Exhibit A (Barnard)**, **Exhibit B (Callaway)**, and **Exhibit C (Miller)**. Individual Defendants acknowledged that they had executed the Agreements.

18.     In the Agreements, H&E promised to provide Individual Defendants with access to trade secrets, customer data, and other confidential information. *Id.* p. 1. In return, Individual Defendants agreed not to use that information on his own or others' behalf or to disclose that information to any third party. *Id.* ₱ 1. The information was only to be used in furtherance of H&E's business.

19.     In the Agreements, Individual Defendants also agreed—for a period of twelve months after the termination of his employment with H&E—not to be employed or retained by, directly or indirectly own, or render any services for a company that competes with H&E's "Business" in the "Restricted Area." *Id.* ₱ 2(a)(i).

20.     The Agreements define "Business" as "selling, renting, servicing, maintaining and otherwise dealing in or with construction equipment, heavy industrial equipment, material handling equipment, and utility equipment (new and used), and related parts, implements or similar assets." *Id.* p. 1.

21.     The "Restricted Area" is defined by the Agreements as the counties in Texas in which Employee performed services at any time during the twelve-month period preceding the termination of Employee's employment with Company.  *Id.* ⁋ 2(b).

22.     The Agreements also require Individual Defendants to give notice to H&E prior to accepting a position with another company during that twelve-month period. *Id.* ⁋ 2(d).

23.     Additionally, the Agreements include a tolling provision in which the time of the restrictive covenant is extended by the period during which an Employee is in violation of any provision of the agreement. *Id.* ⁋ 2(e).

24.     H&E provided Individual Defendants with its confidential customer information. Individual Defendants were given access to H&E's password protected, proprietary sales software, IConnect.

25.     H&E would not have permitted Individual Defendants access to or use of its Confidential Information without the execution of and promises made in the Agreements.

26.     The promises made by Individual Defendants in the Agreements were ancillary and essential to their employment with H&E.

27.     Through IConnect, Individual Defendants had access to H&E's customer and potential customer lists, contact information, and customer purchase history.

28.     H&E also provided Individual Defendants with its proprietary rate structure for the Texas market. The rate structure provided Individual Defendants with the average rental rate for H&E's equipment. The rate structure also described the various discounts Individual Defendants had authority to offer without upper management approval. H&E's rate structure is confidential and is not shared with the general public. The rate structure took years to develop and is based on each H&E's customer's history. It took time and resources to develop the rate structure. The rate

7

structure provides H&E with a competitive advantage in the marketplace. Use of the rate structure, including the underlying data used to form it, would allow another competitor to have an unfair advantage if they received the rate structure or information from the rate structure.

### A. **Barnard's Employment with H&E**

29.     Barnard began work for H&E in July 2020 as an Outside Sales Associate in its Grand Prairie, Texas facility. He was promoted to Outside Sales Representative in October 2020. Barnard transferred to H&E's Fort Worth, Texas facility in August of 2024 where he worked until December 27, 2024, when he resigned, stating he was leaving the industry. Specifically, Barnard stated that he had accepted a job-site security sales position in the computer equipment/software sales industry.

30.     While at H&E, Barnard was a high performer. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

31.     On January 15, 2025, H&E discovered that Barnard had in fact not left the industry like he said, but had taken a sales position, similar to his position at H&E, with H&E's competitor, Opifex, at its Hutchins, Texas facility.

32.     This facility is located in Dallas County, Texas, within the Restricted Area, as defined in the Agreement.

33.     Barnard did not give notice of his employment with Opifex, as required by the Agreement.

34.     On or around January 20, 2025, H&E's Outside Sales Representatives reported to H&E management that Barnard had been calling on its customer base to solicit their business on behalf of Opifex, a flagrant violation of his Agreement. Since leaving H&E, Barnard has visited and attempted to solicit business from at least nine of H&E's high profile, high revenue generating

customers, including Longhorn Mechanical, Inc., Paragon Sports Constructors, LLC, Venture Mechanical, Inc., GLS Masonry, Inc., Potter Concrete, Ltd., Texas Sprinkler, Multicon Services, LLC, 3S Contracting, LLC, and Lumen Lighting and Electric, LLC.

35.     In addition to soliciting H&E's clients, on or around January 16, 2025, H&E learned that one of Opifex's recruiters directly contacted several H&E drivers at the Grand Prairie facility via their personal cell phones to set up interviews. H&E has since lost two drivers, Manuel Olvera and Jesus Garcia, and a field mechanic, Jacob Shortell, to Opifex, all of whom Barnard had relationships with while at H&E.

36.     Moreover, Barnard has used and/or disclosed H&E's Confidential Information concerning the wrongfully targeted H&E customers. In fact, H&E discovered on February 21, 2025, that in the two months leading up to Barnard's resignation, he sent fourteen emails that contained H&E Confidential Information to his personal Outlook account, eight of which were sent just over a week before his resignation. A true and correct copy of Barnard's emails to himself is attached hereto as **Exhibit D**. Specifically, these emails contained the confidential pricing rates of twelve of H&E's customers that could be misused by Barnard and Opifex while in competition against H&E. There is no legitimate business purpose for a departing employee to send himself numerous emails containing Confidential Information like this. Barnard clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Barnard's actions, as he is its agent.

37.     Upon information and belief, Barnard is using H&E's Confidential Information in solicitations of H&E's customers and employees for the benefit of Opifex.

**B. <u>Callaway's Employment with H&E</u>**

38.     Callaway began work for H&E in August 2020 as an Outside Sales Associate in one of its Houston, Texas facilities. He was promoted to an Outside Sales Representative in December 2020. He worked in that office until July 26, 2024, when he resigned.

39.     While at H&E, Callaway was a top Outside Sales Representatives in the Houston facility. In his last two quarters at H&E, he brought in over $1.5 million in revenue. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

40.     Callaway also went to work at H&E's competitor, Opifex, in a sales position, similar to his position at H&E, at Opifex's Houston, Texas facility.

41.     This facility is located in Harris County, Texas, within the Restricted Area, as defined by the Agreement.

42.     Callaway did not give notice of his employment with Opifex, as required by the Agreement.

43.     Callaway is using information obtained during his employment with H&E to solicit clients away from H&E and generate revenue for Opifex.

44.     On or around the week of February 23, 2025, an H&E Outside Sales Representative confirmed to management that Callaway has been calling on its customer base in an attempt to solicit clients away from H&E and offering them lower rates. Two of Callaway's top customers—Regency Plumbing Contractors, L.P. and Weldforce Fabricators, LLC—that he directly worked with and created the pricing sheets for while at H&E, have since entered into rental sales contracts with Opifex, stating specifically that Opifex had undercut H&E's rates by 10%. Callaway has clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Callaway's actions, as he is its agent.

45.     In addition to soliciting H&E's clients, one of H&E's best drivers at the Houston facility, Nathan Cutshall, resigned and stated that he was going to work for Opifex because Opifex offered him more money and total compensation. Opifex recruiters have continuously attempted to solicit other H&E drivers at the Houston facility by contacting drivers directly on their personal cell phones.

46.     Moreover, after Callaway resigned on July 26, 2024, he retained access to his H&E email account, and likely H&E's computer system, for four additional days, until his access was cut off. Indeed, H&E learned on March 5, 2025 that after Callaway resigned, he continued to use his H&E email and respond to customers regarding off-renting their equipment. A true and correct copy of Callaway's emails to customer is attached hereto as **Exhibit E**. In these exchanges, Callaway never informed these customers that his employment ended with H&E, he continued to hold himself out as an agent of H&E with the authority to conduct business on H&E's behalf. Callaway had no authority or consent from H&E to continue conducting business on H&E's behalf after his resignation. H&E is conducting and on-going search to determine if Callaway also had access to its computer systems and databases after his resignation and if he took any Confidential Information as well.

47.     Upon information and belief, Callaway is using H&E's Confidential Information in solicitations of H&E's customers and employees for the benefit of Opifex.

**C.   Miller's Employment with H&E**

48.     Recruited by Barnard, his former college roommate, Miller began work for H&E in February 2022 as an Outside Sales Associate in its Austin, Texas facility. He was promoted to Outside Sales Representative in June 2022. He worked in that position until November 15, 2024, when he resigned, stating he was going to be selling computer products.

49.     While at H&E, Miller was a high performer, bringing in over $1.8 million in revenue in 2024 to H&E. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

50.     The day after Miller resigned from H&E, William Howell, Miller's District Manager, reminded him of his continuing obligations to H&E under the Agreement.

51.     Miller also went to work at H&E's competitor, Opifex, in a sales position, similar to his position at H&E, at Opifex's Austin, Texas facility.

52.     This facility is located in Travis County, Texas, within the Restricted Area, as defined in the Agreement.

53.     Miller did not give notice of his employment with Opifex, as required by the Agreement.

54.     On or around January 22, 2025, H&E's Outside Sales Representatives reported to management that Miller had begun calling on its customer base in an attempt to solicit clients away from H&E and offering them lower rates. Three customers that Miller directly worked with and created the pricing sheets for while at H&E have since left H&E and transitioned their business to Opifex, stating specifically that Miller provided pricing that was less than H&E's. Miller clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Miller's actions, as he is its agent.

55.     H&E rents telehandlers, scissor lifts, and other related equipment to NorthStar Fire ("NSF"), a nationally recognized company that installs, inspects, and maintains fire sprinkler systems for various structures, including commercial buildings, high-rise condominiums, and mixed-use projects. While employed at H&E, Miller managed the account for and regularly engaged with NSF for the rental of various pieces of equipment from H&E, including the rental

of telehandlers, scissor lifts, and other related equipment. NSF has rented from H&E on a regular basis for years. In fact, NSF had an order pending with H&E at the time Miller resigned his employment.

56.     Per the order, H&E delivered the requested equipment on the expected date to NSF. However, upon delivery, NSF informed H&E that it no longer needed the equipment because it had gone with a competitor—Opifex—via Miller due to lower rates.

57.     Miller also worked-up the pricing on another jobsite, Epic, with NSF while he was still employed by H&E. On or around the week of January 12, 2025, NSF informed H&E that it decided to go with Opifex equipment for the Epic project, citing lower rates, provided by Opifex via Miller, as the reasoning.

58.     H&E also rents equipment to Baker Concrete Construction, Inc. ("BCC") and Diamondback Masonry, LLC ("DM"). Both clients are in the construction business. H&E has rented to both of these clients for years as well. During his employment with H&E, Miller managed the account for and regularly engaged with both clients on behalf of H&E.

59.     On or around January 22, 2025, BCC informed H&E that they had taken their business to Opifex and were working with Miller, stating they received pricing from Miller on behalf of Opifex that was lower than H&E's pricing.

60.     On or around January 22, 2025, DM cancelled an order it placed with H&E, informing H&E that it was going to work with Opifex instead based on Miller's solicitations on behalf of Opifex.

61.     As recent as March 5, 2025, one of H&E's current Outside Sales Representatives reported to H&E management that Miller was soliciting H&E's customers. Indeed, Miller was in the Austin offices of DM and JG Roofing Company ATX, LLC, also a customer that Miller

worked with while at H&E, providing them quotes on jobs in the Austin market in an attempt to solicit their business away from H&E to Opifex.

62.     In addition to soliciting clients away from H&E and using H&E's confidential pricing information, Miller provided the personal cell phone numbers of H&E's employees to Opifex's recruiting manager. Indeed, the recruiting manager, upper-management personnel, and the owner of Opifex all contacted H&E's best shop mechanic, Manual Lopez, in an attempt to solicit him away from H&E to Opifex.

63.     Defendants are using and benefitting from the confidential and proprietary information provided to Individual Defendants in the form of its customer identities, pricing, and financial data among other such information. Unless enjoined, Defendants will use this information to damage H&E's business, steal its customers and employees, and potentially drive H&E out of business in the Dallas, Harris, and Travis counties markets and possibly others.

64.     Individual Defendants are acting as agents of Opifex and for the benefit of Opifex in their use of H&E Confidential Information and the unlawful competition of Individual Defendants.

65.     All actions alleged above as to Individual Defendants are alleged as to Opifex, as Individual Defendants are their agents and acting at its direction or for its benefit.

**V.**
**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**
**(Individual Defendants)**

66.     H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

67.     The Agreements executed by Individual Defendants contain reasonable, enforceable restrictions on Individual Defendants' conduct during and after their employment with H&E. Under the Agreements, Individual Defendants owe H&E a contractual duty to refrain from competing and soliciting and doing business with certain clients and accounts of H&E for twelve months, not to solicit employees of H&E for twelve months, and to, at all times, maintain the secrecy and integrity of H&E's Confidential Information and trade secrets.

68.     The Agreements further require Individual Defendants to provide notice to H&E before taking any position with any entity during the twelve-month period following the termination of his employment with H&E.

69.     Barnard signed this Agreement on July 16, 2020 (**Exhibit A**) and breached these duties by his actions including, but not limited to, the following:

    a.   Making use of, taking, downloading, publishing, or disclosing H&E's trade secrets and other Confidential Information;

    b.   Being employed or retained by, or rendering any services to a business that is competitive with H&E in an area restricted by the Agreement;

    c.   Improperly soliciting and/or doing business with H&E's clients to further his own interests;

    d.   Improperly soliciting employees of H&E to leave H&E for Opifex; and

    e.   By not giving notice of his new employment.

70.     Callaway signed this Agreement on December 18, 2020 (**Exhibit B**) and breached these duties by his actions including, but not limited to, the following:

    a.   Making use of, taking, downloading, publishing, or disclosing H&E's trade secrets and other Confidential Information;

b. Being employed or retained by, or rendering any services to a business that is competitive with H&E in an area restricted by the Agreement;

c. Improperly soliciting and/or doing business with H&E's clients to further his own interests;

d. Improperly soliciting employees of H&E to leave H&E for Opifex; and

e. By not giving notice of his new employment.

71. Miller signed this Agreement on March 1, 2022 (**Exhibit C**) and breached these duties by his actions including, but not limited to, the following:

a. Making use of, taking, downloading, publishing, or disclosing H&E's trade secrets and other Confidential Information;

b. Being employed or retained by, or rendering any services to a business that is competitive with H&E in an area restricted by the Agreement;

c. Improperly soliciting and/or doing business with H&E's clients to further his own interests;

d. Improperly soliciting employees of H&E to leave H&E for Opifex; and

e. By not giving notice of his new employment.

72. The Agreements are in writing, signed by Individual Defendants, supported by adequate consideration, and are sufficiently definite and reasonable in time to be enforceable.

73. H&E performed its obligations under the Agreements. Individual Defendants' breaches caused injury to H&E and H&E did not get the full benefit of the obligations owed to it by Individual Defendants under the Agreements.

74. H&E is entitled to a temporary injunction and a permanent injunction enjoining Individual Defendants from soliciting and doing business with certain customers and prospective

customers in accordance with the Agreements, soliciting employees of H&E in accordance with the Agreements, and using or disclosing any of H&E's trade secrets and Confidential Information to third parties, including Opifex, and to return all of H&E's Confidential Information and trade secrets in their possession. Because of Individual Defendants' wrongful breaches of the Agreements, H&E is also entitled to damages occasioned by the breaches, attorneys' fees, litigation costs, and expenses in having to file this action and prosecute its claims against Individual Defendants and Opifex.

## COUNT II
## BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Individual Defendants)

75.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

76.    Individual Defendants were H&E's employees and had authority to bind H&E. As H&E's agents and employees, Individual Defendants owed H&E fiduciary duties of loyalty.

77.    Individual Defendants breached their duties of loyalty to H&E by using H&E's Confidential Information and trade secrets, during their employment with H&E, in a manner that was adverse to H&E. On information and belief, Individual Defendants used H&E's Confidential Information and trade secrets for themselves and provided such Confidential Information and trade secrets to Opifex, for the purposes of soliciting H&E's customers, business opportunities, and employees. Moreover, regardless of whether Individual Defendants used H&E's Confidential Information or trade secrets, they had an obligation to devote their efforts for the benefit of H&E while still employed by H&E. By soliciting customers and employees to H&E for their own benefit and that of H&E while employed by H&E, Individual Defendants further breached their fiduciary duties to H&E.

78.    Individual Defendants' breaches of their fiduciary duties to H&E have caused H&E to sustain and continue to sustain damages in excess of the minimum jurisdictional limits of this Court.

### COUNT III
### VIOLATION OF THE DEFEND TRADE SECRETS ACT ("DTSA")
### (All Defendants)

79.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

80.    H&E's confidential and proprietary information constitutes trade secrets under 18 U.S.C. § 1839(3) because H&E derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable through proper means, by H&E's competitors and because H&E has taken reasonable measures to keep such information secret.

81.    H&E provides services to clients across state lines, and H&E's trade secrets are related to services used in interstate commerce.

82.    H&E takes reasonable measures to protect the secrecy of its confidential and proprietary information and trade secrets. These measures include disseminating confidentiality policies such as those Individual Defendants agreed to in the Agreements, password protected databases, and limiting dissemination of confidential and trade secret information on a need-to-know basis.

83.    Individual Defendants knew they had a duty to maintain the secrecy of H&E's Confidential Information and trade secrets due to their executions of the Agreements.

84.    Individual Defendants had a duty not to disclose or use H&E's Confidential Information and trade secrets for any purposes inconsistent with H&E's ownership of such information, including for their own benefit.

85.   As shown above, Individual Defendants misappropriated H&E's trade secrets by wrongfully using H&E's pricing sheets to offer H&E's customers lower rates for the benefit of Opifex. Additionally, Defendant Barnard, before resigning, misappropriated H&E's trade secrets by wrongfully emailing H&E's customer pricing sheets to his personal email.

86.   Individual Defendants' actions constitute a violation of 18 U.S.C. § 1836, *et seq.*

87.   Individual Defendant' misappropriation of H&E's trade secrets was willful and malicious under 18 U.S.C. § 1836(b)(3)(C).

88.   Defendants have been unjustly enriched as a proximate result of Individual Defendants' misappropriation of H&E's trade secrets.

89.   H&E lacks an adequate remedy at law to prevent the use of its confidential and trade secret information and to secure its return. H&E is entitled to preliminary and permanent injunctive relief enjoining Defendants from unlawful use and misappropriation of H&E's trade secret information.

90.   To the extent that Defendants have provided H&E's trade secrets or other Confidential Information to third parties, those parties should be ordered to return and/or destroy that information.

91.   H&E is further entitled to actual damages and disgorgement of any amounts by which Defendants have been unjustly enriched, in amounts to be prove at trial, as well as punitive and/or exemplary damages.

92.   H&E has retained the law firm of Ogletree, Deakins, Nash, Smoak & Stewart to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the fullest extent allowed under law.

COUNT IV
## VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT ("TUTSA")
(All Defendants)

93.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

94.    H&E derives independent economic value from its Confidential Information and trade secrets and entrusted this information to Individual Defendants. H&E's Confidential Information and trade secrets are not generally known or readily ascertainable by proper means by other persons who could wrongfully obtain economic value from their disclosure or use. H&E took reasonable steps to keep its information secret by limiting the information to only those within H&E with a legitimate business right and need to know, requiring its computers containing such information to be password protected, not disclosing such information outside of H&E, and through a variety of additional methods. Moreover, the information has actual and potential independent economic value to third parties because it is not generally known and not readily ascertainable by proper means.

95.    Defendants willfully, intentionally, knowingly, and maliciously misappropriated and are using H&E's Confidential Information for their benefit, including information about its clients and accounts, without H&E's consent in violation of Texas law.

96.    This information constitutes a "trade secret" under TUTSA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002. H&E expended substantial time, effort, money, and resources in developing and maintaining its confidential and trade secret information. H&E took reasonable steps to keep its information secret by limiting the information to only those within H&E with a legitimate business right and need to know, not disclosing such information outside of H&E, and through a variety of methods. Moreover, the information has actual and potential independent

economic value to third parties because it is not generally known and not readily ascertainable by proper means.

97.    Defendants' misappropriation of H&E's confidential trade secret and Confidential Information has directly and proximately caused, and unless enjoined, will continue to cause H&E irreparable harm for which there exists no adequate remedy at law. In addition, Defendants' misappropriation has caused and continues to cause harm and damage to H&E in excess of the jurisdictional limits of the Court, including but not limited to, loss or impairment of Confidential Information and trade secrets, profits from customers and clients of H&E, and damage to customer relationships, which may never be repaired.

98.    Based on Defendants' misappropriation of this information, H&E seeks all damages, including Defendants' unjust enrichment resulting from the misappropriation, as well as exemplary damages. Defendants' misappropriation was willful and malicious, and in conscious disregard of H&E's rights; H&E therefore seeks to recover their reasonable attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE section 134A.005(3). Additionally, H&E also asks that the Court disgorge any profits obtained by Opifex as a result of the misappropriation and provide such profits to H&E.

## COUNT V
## CONVERSION
### (Defendants)

99.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

100.    H&E asserts this claim in the alternative to its TUTSA claim to the extent the factfinder determines that TUTSA protection does not exist for some or all of Defendants' misconduct alleged herein.

101.    Whether it qualifies as a trade secret or not, H&E's confidential and proprietary information is the exclusive property of H&E. Defendants wrongfully converted H&E's property for their own use and intended to use that property in a manner inconsistent with H&E's rights.

102.    As a result of Defendants' conversion, H&E has suffered injury. H&E seeks to recover all actual damages proximately caused by Defendants' conversion. H&E also seeks to recover exemplary damages because Defendants' actions were committed with malice.

### COUNT VI
### VIOLATION OF THE TEXAS HARMFUL ACCESS BY COMPUTER ACT ("THACA")
### (Barnard and Callaway)

103.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

104.    Using H&E's computer equipment and systems, Barnard accessed H&E's Confidential Information and emailed twelve of H&E's customer's pricing sheets to his personal Outlook account in the weeks and days leading up to his resignation.

105.    In doing so, Barnard retrieved and intercepted data from, altered data or computer software in, or otherwise made use of a resource—i.e., accessed (as defined by TEX. PEN. CODE § 33.02(a))—a computer, computer network, computer program, or computer system owned by H&E.

106.    Although Barnard had H&E's consent to access its computer, network, and systems during his employment for job-related purposes, he did not have H&E's consent to use its resources for his own benefit during his employment with H&E, or after his resignation from H&E. Barnard's actions exceeded the scope of H&E's consent.

107.    Accordingly, Barnard knowingly accessed H&E's computer, computer network, or computer system without H&E's consent, pursuant to TEX. PEN. CODE § 33.01(12).

108.    In the four days following Callaway's resignation from H&E, Callaway accessed his H&E email, and possibly its computer system, and sent numerous emails to H&E customers, conducting business on behalf of H&E, including off-renting equipment. At no point did Callaway disclose to these customers that he resigned from H&E, leading customers to believe he still had the authority and consent of H&E to act on its behalf.

109.    In doing so, Callaway retrieved and intercepted data from, altered data or computer software in, or otherwise made use of a resource—i.e., accessed (as defined by TEX. PEN. CODE § 33.02(a))—a computer, computer network, computer program, or computer system owned by H&E.

110.    Upon Callaway's resignation, he no longer had H&E's consent to access H&E's resources.

111.    Accordingly, Barnard knowingly accessed H&E's computer, computer network, or computer system without H&E's consent, pursuant to TEX. PEN. CODE § 33.01(12).

112.    As a direct and proximate result of both Barnard and Callaway's misappropriation of H&E's property, H&E has suffered and continued to suffer damages, with the exact amount to be proven at trial.

113.    As a direct and proximate result of both Barnard and Callaway's theft and/or alteration of H&E's property, H&E are entitled to recover their reasonable attorneys' fees and costs pursuant to TEX. CIV. PRAC. & REM CODE § 143.002(2).

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS
### (Individual Defendants)

114.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

115.    H&E had and have valid non-solicitation and confidentiality agreements with Individual Defendants. H&E also had and have contracts and ongoing business relationships with its clients.

116.    Each Individual Defendant knew that other Individual Defendants executed similar Agreements with H&E because all Outside Sales Representatives at H&E were required to sign them. Individual Defendants also knew H&E had ongoing contracts and business relationships with numerous customers and accounts because they serviced those customers and accounts. Despite this knowledge, Individual Defendants encouraged and assisted each other in breaching their contractual obligations, soliciting H&E's customers to Opifex and soliciting H&E's employees to Opifex.

117.    Individual Defendants' conduct has been willful and intentional, without a legal right or privilege, and designed to interfere with H&E's contractual and business relations with Individual Defendants and H&E's customers and employees.

118.    Individual Defendants' interference proximately caused injury to H&E.

119.    H&E is entitled to a temporary injunction and a permanent injunction enjoining Individual Defendants from tortiously interfering with Individual Defendants' Agreements and with H&E's contractual, business, and employment relationships by, including without limitation, directly or indirectly (a) soliciting and/or doing business with certain customers and prospective customers of H&E in violation of Individual Defendants' Agreements; (b) soliciting, inducing, or recruiting employees of H&E in violation of the Agreements; and (c) using or disclosing any of H&E's Confidential Information and trade secrets. Because of Individual Defendants' willful and intentional interference with H&E's contracts and business relations, H&E is also entitled to

damages including all lost profits occasioned by such conduct, attorneys' fees, litigation costs, and expenses in having to file this action and prosecute its claims against Individual Defendants.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS
### (Opifex)

120.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

121.    H&E had and have valid non-solicitation and confidentiality agreements with Individual Defendants. H&E also had and have contracts and ongoing business relationships with its clients.

122.    Opifex knew of those Agreements between Individual Defendants and H&E. Opifex also knew H&E had ongoing contracts and business relationships with numerous customers and accounts tied to Individual Defendants. Despite this knowledge, Opifex encouraged and assisted Individual Defendants in breaching their contractual obligations by assisting in the solicitation of H&E's customers and employees to Opifex.

123.    Opifex's conduct has been willful and intentional, without a legal right or privilege, and designed to interfere with H&E's contractual and business relations with Individual Defendants and H&E's customers and employees.

124.    Opifex's interference proximately caused injury to H&E.

125.    H&E is entitled to a temporary injunction and a permanent injunction enjoining Opifex from tortiously interfering with Individual Defendants' Agreements and with H&E's contractual, business, and employment relationships by, including without limitation, assisting or acting in concert with Individual Defendants to (a) solicit and/or do business with certain customers and prospective customers of H&E in violation of Individual Defendants' Agreements;

(b) solicit, induce, or recruit employees of H&E in violation of the Agreements; and (c) use or disclose any of H&E's Confidential Information and trade secrets. Because of Opifex's wrongful conduct described above, H&E is also entitled to damages including all lost profits occasioned by such conduct, attorneys' fees, litigation costs, and expenses in having to file this action and prosecute its claims against Opifex.

## COUNT IX
## AIDING AND ABETTING
### (Opifex)

126.    H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

127.    Individual Defendants committed improper acts by unlawfully breaching their Agreements, soliciting H&E's customers and accounts, retaining and using H&E's trade secrets and Confidential Information, and engaging in conduct for their own benefit and that of Opifex, all the while actively employed by H&E. Individual Defendants did so with the assistance of Opifex. Individual Defendants also owed a fiduciary duty to H&E and were obligated to act in its best interests. Despite this responsibility, Individual Defendants breached their fiduciary duties by soliciting H&E's customers and prospects, retaining and using H&E's trade secrets and confidential and proprietary information, all with Opifex's knowledge, aid, and assistance.

128.    H&E suffered injury as a proximate result of Opifex's actions and assistance and has been substantially damaged. Actual damages resulting from such conduct are not subject to precise calculation at this time but are in excess of the minimum, jurisdictional limits of this Court.

**COUNT X**
**CONSPIRACY**
**(All Defendants)**

129.     H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

130.     Opifex has conspired with key H&E sales representatives and their teams in the Austin, Houston, and Dallas-Fort Worth area—while they were still employed by H&E—to raid H&E's key employees and valuable clientele in violation of Individual Defendants' Agreements with H&E. Opifex and Individual Defendants benefitted from the breaches of common and statutory law obligations, including breaches of their duty of loyalty as well as contractual obligations owed to H&E.

131.     On information and belief, Defendants had a meeting of the minds on this object and course of action.

132.     Defendants committed unlawful, overt acts by openly, actively, and improperly soliciting and recruiting H&E customers, prospects, and employees. Upon information and belief, Individual Defendants committed unlawful, overt acts by obtaining and/or removing H&E's Confidential Information and trade secrets for improper purposes and without its consent. Such acts were to the benefit of Defendants and to the detriment of H&E.

133.     H&E suffered injury as a proximate result of Defendants' actions and has been substantially damaged. Actual damages resulting from the conspiracy are not subject to precise calculation at this time but are in excess of the minimum jurisdictional limits of this Court.

**VI.**
**APPLICATION FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS**

134.     H&E reasserts and incorporates by reference the allegations made in the above paragraphs.

135.    H&E is entitled to the entry of a preliminary and permanent injunctions against Defendants.

136.    As shown in its verified pleading, H&E demonstrates that: (1) Defendants have engaged in wrongful acts that provide H&E with causes of action; (2) H&E has a probable right to relief; and (3) absent injunctive relief, H&E will suffer irreparable harm and probable injury for which there is no adequate remedy at law.

### A.  **Wrongful Acts**

137.    As shown in the paragraphs above and attached documents, Individual Defendants have breached their legal obligations to H&E, pursuant to the Agreements they executed by, at the very least, violating the express terms of the non-solicitation covenants and confidentiality agreements. Barnard also violated their fiduciary duties of loyalty by improperly soliciting customers and employees of H&E, and wrongfully using its Confidential Information, during their employment with H&E. Opifex conspired with Individual Defendants to violate the express terms of their non-solicitation covenants and confidentiality agreements and to improperly divert H&E's clients and employees to their own business, while benefiting from the use of H&E's Confidential Information and trade secrets.

### B.  **Probable Right to Relief**

138.    H&E is entitled to injunctive relief because it can demonstrate a probable right to relief upon formal hearing. *See Sun v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968). H&E need not prove at this stage that it will ultimately prevail at trial, nor does this element invite the Court to predict the ultimate outcome. *See Intercontinental Terminals Co. v. Voapk N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Instead, a "probable right of

recovery" is a legal term of art that simply indicates that an applicant has pleaded a cause of action and presented "some evidence that tends to sustain it." *Id.*

139.    As set forth above, H&E has asserted claims for breach of contract, misappropriation of trade secrets, breach of duty of loyalty, and tortious interference of contract and business relations, as well as conspiracy and aiding and abetting claims. The verified facts confirm that Defendants have, and will continue to, solicit customers and accounts of H&E and employees of H&E, all while utilizing Confidential Information and trade secrets of H&E.

**C.    <u>Probable Irreparable Injury for Which There is No Adequate Remedy at Law</u>**

140.    Injunctive relief is appropriate where a plaintiff will suffer probable injury that is imminent, irreparable, and for which there is no adequate remedy at law. *See Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex. App.—Houston [1st Dist.] 1992, no writ). An irreparable injury is an injury that cannot be adequately compensated in damages or measured by an exact pecuniary standard. *See Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 472 (Tex. App.—Houston [14th Dist.] 1986, writ ref d n.r.e.). By the same token, if damages cannot be calculated with relative precision for the complained-of harm, there is no adequate remedy at law. *See Tex. Indust. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App. Houston [1st Dist.] 1992, no writ). Defendants are working at this very moment to solicit H&E's clients and employees, all while armed with H&E's Confidential Information and trade secrets. Texas law unequivocally treats this situation as satisfying the test for imminent and irreparable harm. *See T-N-T Motorsports, Inc. v. Hennessy Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ("Injunctive relief is recognized as a proper remedy to protect Confidential Information and trade secrets.") (internal citation omitted). Indeed, "[w]hen a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner

may be presumed." *LAC, Ltd V. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet). "The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law." *Id.* (citing *Williams*, 704 S.W.2d at 471). Moreover, if not restrained and if Defendants are allowed to continue to violate the Agreements and Texas law, they will continue to substantially harm H&E's relationships with its customers and employees.

**D.  Request for Injunctive Relief**

141.    H&E asks this Court to grant a preliminary injunction and a permanent injunction, enjoining and restraining Individual Defendants, and all others acting in concert with them, from directly or indirectly:

   a.  Using, disclosing, or further acquiring H&E's trade secrets and other Confidential Information, including its financial data or its customer's identities and contact information;

   b.  Being employed or retained by, directly or indirectly own, or rendering any services for a company that is selling, renting, or servicing any equipment that is also sold, rented, or serviced in the restricted geographic locations for a period of twelve months;

   c.  Soliciting H&E's employees for a period of 12 months from the entry of the permanent injunction; and

   d.  Restraining Individual Defendants from altering or deleting the contents of any personal or business email accounts until a forensic image is made available for analysis.

H&E further requests that the Court order Individual Defendants to refrain from altering or deleting the contents of any personal or business email accounts until a forensic image is made,

produce all devices on which H&E's Confidential Information has been placed, and return all Confidential Information and trade secrets of H&E in their possession, custody, or control to H&E immediately.

142.     H&E requests that the Court grant a preliminary injunction and a permanent injunction, enjoining and restraining Defendant Opifex, and all others acting in concert with it from, directly or indirectly:

a.  Possessing, using, or disclosing H&E's trade secrets and other Confidential Information in its possession, custody, or control;

b.  Interfering with H&E's contracts with Individual Defendants;

c.  Engaging in any business-related contact with any Protected Account or Prospective Account connected in any way with any Individual Defendant as an employee of H&E (excluding any pre-existing business Opifex may have with such companies unrelated to Individual Defendants);

d.  Soliciting any other employee of H&E in circumstances that would result in the employee violating any contractual or legal obligations owed to H&E; and

e.  Restraining Opifex from altering or deleting the contents of any database and/or computer networks until a forensic image is made available for analysis.

H&E further requests that the Court order Defendant Opifex to identify and later destroy any of H&E's Confidential Information and trade secrets that Individual Defendants have placed into Opifex's database and/or computer networks.

## VI.
## CONDITIONS PRECEDENT

143.     All conditions precedent to the recovery of the relief requested by H&E herein have occurred.

## VII.
## BOND

144.　　H&E is not opposed to posting a reasonable bond, if ordered to do so by the Court.

## VIII.
## PRAYER FOR RELIEF

145.　　H&E prays for judgment against Defendants as follows:

　　a.　That Defendants be cited to appear at a hearing and show cause why a temporary injunction should not be issued according to the terms requested herein;

　　b.　That the Court, upon hearing, enter a temporary injunction, thereafter to be made permanent;

　　c.　That the Court, after trial, enter a final judgment against Defendants, containing a permanent injunction and awarding H&E damages in an amount in excess of the minimum jurisdictional limits of this Court, including exemplary damages, according to the proof at the time of trial; and

　　d.　That the Court award H&E its reasonable attorneys' fees incurred in connection with the prosecution of this action, costs of suit incurred herein, and interest awardable to H&E by law; and

　　e.　That H&E recover such additional relief at law or in equity as may be just.

　　　　(1) Each party may propound up to ten (10) requests for production per opposing party, with answers and responsive documents to be provided via email or hand-delivery on or before the fifth (5th) business day after service.

　　　　(2) Each party may propound up to ten (10) interrogatories per opposing party, with answers to be provided via email or hand-delivery on or before the fifth (5th) business day after service.

(3) Each party may conduct the deposition of any opposing party, with each deposition taking no longer than three (3) hours each, with at least three (3) days' notice of same to the other parties, provided that the parties confer to schedule each deposition at a mutually agreeable date, time, and location.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff H&E prays that the Court enter an order for the injunctive relief requested here in, permitting the above-described expedited discovery, and upon final trial of this matter entering judgment in favor of H&E for any and all relief to which it may be entitled, and granting H&E all additional and further relief, general and special at law or in equity, to which it is justly entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.**

*/s/ Christoper E. Moore*
Christopher E. Moore
Texas Bar No. 24052778
SD TX Bar No. 713063
christopher.moore@ogletree.com
One Allen Center
500 Dallas Street, Suite 2100
Houston, TX 77002
P: 713-655-0855
F: 713-655-0020

**ATTORNEY IN CHARGE
FOR PLAINTIFF H&E EQUIPMENT
SERVICES, INC.**

**OF COUNSEL:**

Stephen J. Quezada
Of Counsel
Texas Bar. No. 24076195
SD TX Bar No. 1348753
stephen.quezada@ogletree.com
One Allen Center
500 Dallas Street, Suite 2100
Houston, TX 77002
P: 713-655-0855
F: 713-655-0020

## UNSWORN DECLARATION

I, John Kunz, am the District Manager of H&E Equipment Services, Inc. and have read the foregoing Complaint, and pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Paragraphs 10–37 and 63–65 of the Complaint are within my personal knowledge and are true and correct.

Dated this 10th day of March, 2025

DocuSigned by:

_JD kunz_

—A019F4CBA4AF468...

John Kunz

## UNSWORN DECLARATION

I, Joshua Vu, am the District Manager of H&E Equipment Services, Inc. and have read the foregoing Complaint, and pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing in Paragraphs 10–28, 38–47, and 63–65 of the Complaint are within my personal knowledge and are true and correct.

Dated this 10th of March, 2025

Signed by:

ED74432E83F7450...

Joshua Vu

## <u>UNSWORN DECLARATION</u>

I, William Howell, am the District Manager of H&E Equipment Services, Inc. and have read the foregoing Complaint, and pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing in Paragraphs 10–28 and 48–65 of the Complaint are true and correct.

Dated this 10th of March, 2025



William Howell