UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civ. A. No. 4:25-cv-01127 |
| ADAN BARNARD, COLIN CALLAWAY, TODD MILLER, and OPIFEX LLC, | § § § § | |
| *Defendants*. | § § | |

**Temporary Restraining Order**

Before the Court is Plaintiff H&E Equipment Services, Inc.'s Application for Temporary Restraining Order and Request for Ex Parte Consideration (the "Application"). Also before the Court is H&E's Verified Original Complaint, Application for Preliminary and Permanent Injunction. Dkt. No. 1. The Court has considered both filings and finds that H&E has met the standard for the issuance of this Temporary Restraining Order. Specifically, the Court finds as follows:

1. H&E provided notice of its Application to Defendants. Opifex received notice to its known counsel.

2. H&E is an equipment rental company that provides new, used and rental earthmoving, construction, industrial, material handling heavy equipment, parts, and services in markets across the United States.

3. H&E faces significant competition and exerts great effort and expense in identifying and marketing to potential customers and maintaining their customers for repeat sales, rentals, and services.

1

4. In doing so, H&E has developed valuable confidential and proprietary business information, including, but not limited to, confidential customer and target lists, purchasing histories and service schedules, marketing plans and information, consumer data, referral sources, vendor and business affiliate supplier data, and pricing and revenue information, as well as employee salary information (collectively the "Confidential Information").

5. H&E relies on its Outside Sales Representatives to sell and rent equipment to its customers. H&E's Outside Sales Representatives closely associate with, and have repeated contact with, H&E's customers. H&E's customers tend to directly associate H&E's business with the Outside Sales Representatives.

6. Opifex is a direct competitor of H&E. Opifex, like H&E, is a heavy equipment rental company serving the construction industry, providing earthmoving and construction equipment. Like H&E, Opifex rents new forklifts, aerial lifters, excavators, trucks, and various site services and parts to customers in Texas. Opifex has locations in the Dallas-Fort Worth metroplex, Houston, San Antonio, Austin, and College Station.

7. Opifex, pursuant to the information on its website and included in the Application, clearly establishes that it is a direct competitor of H&E.

8. Individual Defendants all worked as Outside Sales Representatives for H&E. In their roles as Outside Sales Representatives, Individual Defendants represented H&E and, among other duties, were responsible for developing relationships on behalf of H&E with existing and prospective customers and members of the community for the purpose of gaining business for H&E, for which they were each paid a salary and commissions. Individual Defendants had significant and consistent interaction with H&E's customers. Specifically, Individual Defendants were responsible for business development and maintenance of customer relationships. Individual

Defendants' job duties required them to interface with customers to keep them updated as to project status. In addition, they participated in sales calls, customer visits, handled customer issues, strategized marketing, development, and competitive market pricing strategies.

9. Individual Defendants each signed and executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement (collectively, the "Agreement"), as is standard practice for that position across the industry. True and correct copies of the Agreements are attached to the Application **Exhibit A (Barnard)**, **Exhibit B (Callaway)**, and **Exhibit C (Miller)**. The Agreements are incorporated by reference.

10. In the Agreements, H&E promised to provide Individual Defendants with access to trade secrets, customer data, and other confidential information. *Id.* p. 1. In return, Individual Defendants agreed not to use that information on his own or others' behalf or to disclose that information to any third party. *Id.* ¶ 1. The information was only to be used in furtherance of H&E's business.

11. In the Agreements, Individual Defendants also agreed—for a period of twelve months after the termination of his employment with H&E—not to be employed or retained by, directly or indirectly own, or render any services for a company that competes with H&E's "Business" in the "Restricted Area." *Id.* ¶ 2(a)(i).

12. The Agreements define "Business" as "selling, renting, servicing, maintaining and otherwise dealing in or with construction equipment, heavy industrial equipment, material handling equipment, and utility equipment (new and used), and related parts, implements or similar assets." *Id.* p. 1.

13. The "Restricted Area" is defined by the Agreements as the counties in Texas in which Employee performed services at any time during the twelve-month period preceding the termination of Employee's employment with Company. *Id.* ¶ 2(b).

14. The Agreements also require Individual Defendants to give notice to H&E prior to accepting a position with another company during that twelve-month period. *Id.* ¶ 2(d).

15. H&E provided Individual Defendants with its confidential customer information. Individual Defendants were given access to H&E's password protected, proprietary sales software, IConnect.

16. H&E would not have permitted Individual Defendants access to or use of its Confidential Information without the execution of and promises made in the Agreements.

17. The promises made by Individual Defendants in the Agreements were ancillary and essential to their employment with H&E.

18. Through IConnect, Individual Defendants had access to H&E's customer and potential customer lists, contact information, and customer purchase history.

19. H&E also provided Individual Defendants with its proprietary rate structure for the Texas market. The rate structure provided Individual Defendants with the average rental rate for H&E's equipment. The rate structure also described the various discounts Individual Defendants had authority to offer without upper management approval. H&E's rate structure is confidential and is not shared with the general public. The rate structure took years to develop and is based on each H&E's customer's history. It took time and resources to develop the rate structure. The rate structure provides H&E with a competitive advantage in the marketplace. Use of the rate structure, including the underlying data used to form it, would allow another competitor to have an unfair advantage if they received the rate structure or information from the rate structure.

20. Barnard began work for H&E in July 2020 as an Outside Sales Associate in its Grand Prairie, Texas facility. He was promoted to Outside Sales Representative in October 2020. Barnard transferred to H&E's Fort Worth, Texas facility in August of 2024 where he worked until December 27, 2024, when he resigned, stating he was leaving the industry. Specifically, Barnard stated that he had accepted a job-site security sales position in the computer equipment/software sales industry.

21. While at H&E, Barnard was a high performer. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

22. On January 15, 2025, H&E discovered that Barnard had in fact not left the industry like he said, but had taken a sales position, similar to his position at H&E, with H&E's competitor, Opifex, at its Hutchins, Texas facility.

23. This facility is located in Dallas County, Texas, within the Restricted Area, as defined in the Agreement.

24. Barnard did not give notice of his employment with Opifex, as required by the Agreement.

25. On or around January 20, 2025, H&E's Outside Sales Representatives reported to H&E management that Barnard had been calling on its customer base to solicit their business on behalf of Opifex, a flagrant violation of his Agreement. Since leaving H&E, Barnard has visited and attempted to solicit business from at least nine of H&E's high profile, high revenue generating customers, including Longhorn Mechanical, Inc., Paragon Sports Constructors, LLC, Venture Mechanical, Inc., GLS Masonry, Inc., Potter Concrete, Ltd., Texas Sprinkler, Multicon Services, LLC, 3S Contracting, LLC, and Lumen Lighting and Electric, LLC.

26.     In addition to soliciting H&E's clients, on or around January 16, 2025, H&E learned that one of Opifex's recruiters directly contacted several H&E drivers at the Grand Prairie facility via their personal cell phones to set up interviews. H&E has since lost two drivers, Manuel Olvera and Jesus Garcia, and a field mechanic, Jacob Shortell, to Opifex, all of whom Barnard had relationships with while at H&E.

27.     Moreover, Barnard has used and/or disclosed H&E's Confidential Information concerning the wrongfully targeted H&E customers. In fact, H&E discovered on February 21, 2025, that in the two months leading up to Barnard's resignation, he sent fourteen emails that contained H&E Confidential Information to his personal Outlook account, eight of which were sent just over a week before his resignation. A true and correct copy of Barnard's emails to himself is attached to the Application as **Exhibit D**. Specifically, these emails contained the confidential pricing rates of twelve of H&E's customers that could be misused by Barnard and Opifex while in competition against H&E. There is no legitimate business purpose for a departing employee to send himself numerous emails containing Confidential Information like this. Barnard clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Barnard's actions, as he is its agent.

28.     Barnard is using H&E's Confidential Information in solicitations of H&E's customers and employees for the benefit of Opifex.

29. Callaway began work for H&E in August 2020 as an Outside Sales Associate in one of its Houston, Texas facilities. He was promoted to an Outside Sales Representative in December 2020. He worked in that office until July 26, 2024, when he resigned.

30. While at H&E, Callaway was a top Outside Sales Representatives in the Houston facility. In his last two quarters at H&E, he brought in over $1.5 million in revenue. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

31. Callaway also went to work at H&E's competitor, Opifex, in a sales position, similar to his position at H&E, at Opifex's Houston, Texas facility.

32. This facility is located in Harris County, Texas, within the Restricted Area, as defined by the Agreement.

33. Callaway did not give notice of his employment with Opifex, as required by the Agreement.

34. Callaway is using information obtained during his employment with H&E to solicit clients away from H&E and generate revenue for Opifex.

35. On or around the week of February 23, 2025, an H&E Outside Sales Representative confirmed to management that Callaway has been calling on its customer base in an attempt to solicit clients away from H&E and offering them lower rates. Two of Callaway's top customers—Regency Plumbing Contractors, L.P. and Weldforce Fabricators, LLC—that he directly worked with and created the pricing sheets for while at H&E, have since entered into rental sales contracts with Opifex, stating specifically that Opifex had undercut H&E's rates by 10%. Callaway has clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Callaway's actions, as he is its agent.

36. In addition to soliciting H&E's clients, one of H&E's best drivers at the Houston facility, Nathan Cutshall, resigned and stated that he was going to work for Opifex because Opifex offered him more money and total compensation. Opifex recruiters have continuously attempted to solicit other H&E drivers at the Houston facility by contacting drivers directly on their personal cell phones.

37. Moreover, after Callaway resigned on July 26, 2024, he retained access to his H&E email account, and likely H&E's computer system, for four additional days, until his access was cut off. Indeed, H&E learned on March 5, 2025 that after Callaway resigned, he continued to use his H&E email and respond to customers regarding off-renting their equipment. A true and correct copy of Callaway's emails to customer is attached to the Application as **Exhibit E**. In these exchanges, Callaway never informed these customers that his employment ended with H&E, he continued to hold himself out as an agent of H&E with the authority to conduct business on H&E's behalf. Callaway had no authority or consent from H&E to continue conducting business on H&E's behalf after his resignation. H&E is conducting and on-going search to determine if Callaway also had access to its computer systems and databases after his resignation and if he took any Confidential Information as well.

38. Callaway is using H&E's Confidential Information in solicitations of H&E's customers and employees for the benefit of Opifex.

39. Recruited by Barnard, his former college roommate, Miller began work for H&E in February 2022 as an Outside Sales Associate in its Austin, Texas facility. He was promoted to Outside Sales Representative in June 2022. He worked in that position until November 15, 2024, when he resigned, stating he was going to be selling computer products.

40. While at H&E, Miller was a high performer, bringing in over $1.8 million in revenue in 2024 to H&E. He worked closely with customers, managed their accounts, and created many of their pricing sheets.

41. The day after Miller resigned from H&E, William Howell, Miller's District Manager, reminded him of his continuing obligations to H&E under the Agreement.

42. Miller also went to work at H&E's competitor, Opifex, in a sales position, similar to his position at H&E, at Opifex's Austin, Texas facility.

43. This facility is located in Travis County, Texas, within the Restricted Area, as defined in the Agreement.

44. Miller did not give notice of his employment with Opifex, as required by the Agreement.

45. On or around January 22, 2025, H&E's Outside Sales Representatives reported to management that Miller had begun calling on its customer base in an attempt to solicit clients away from H&E and offering them lower rates. Three customers that Miller directly worked with and created the pricing sheets for while at H&E have since left H&E and transitioned their business to Opifex, stating specifically that Miller provided pricing that was less than H&E's. Miller clearly inappropriately used the Confidential Information to compete with H&E on behalf of Opifex. Opifex is responsible for Miller's actions, as he is its agent.

46. H&E rents telehandlers, scissor lifts, and other related equipment to NorthStar Fire ("NSF"), a nationally recognized company that installs, inspects, and maintains fire sprinkler systems for various structures, including commercial buildings, high-rise condominiums, and mixed-use projects. While employed at H&E, Miller managed the account for and regularly engaged with NSF for the rental of various pieces of equipment from H&E, including the rental

of telehandlers, scissor lifts, and other related equipment. NSF has rented from H&E on a regular basis for years. In fact, NSF had an order pending with H&E at the time Miller resigned his employment.

47. Per the order, H&E delivered the requested equipment on the expected date to NSF. However, upon delivery, NSF informed H&E that it no longer needed the equipment because it had gone with a competitor—Opifex—via Miller due to lower rates.

48. Miller also worked-up the pricing on another jobsite, Epic, with NSF while he was still employed by H&E. On or around the week of January 12, 2025, NSF informed H&E that it decided to go with Opifex equipment for the Epic project, citing lower rates, provided by Opifex via Miller, as the reasoning.

49. H&E also rents equipment to Baker Concrete Construction, Inc. ("BCC") and Diamondback Masonry, LLC ("DM"). Both clients are in the construction business. H&E has rented to both of these clients for years as well. During his employment with H&E, Miller managed the account for and regularly engaged with both clients on behalf of H&E.

50. On or around January 22, 2025, BCC informed H&E that they had taken their business to Opifex and were working with Miller, stating they received pricing from Miller on behalf of Opifex that was lower than H&E's pricing.

51. On or around January 22, 2025, DM cancelled an order it placed with H&E, informing H&E that it was going to work with Opifex instead based on Miller's solicitations on behalf of Opifex.

52. As recent as March 5, 2025, one of H&E's current Outside Sales Representatives reported to H&E management that Miller was soliciting H&E's customers. Indeed, Miller was in the Austin offices of DM and JG Roofing Company ATX, LLC, also a customer that Miller worked

with while at H&E, providing them quotes on jobs in the Austin market in an attempt to solicit their business away from H&E to Opifex.

53. In addition to soliciting clients away from H&E and using H&E's confidential pricing information, Miller provided the personal cell phone numbers of H&E's employees to Opifex's recruiting manager. Indeed, the recruiting manager, upper-management personnel, and the owner of Opifex all contacted H&E's best shop mechanic, Manual Lopez, in an attempt to solicit him away from H&E to Opifex.

54. Defendants are using and benefitting from the confidential and proprietary information provided to Individual Defendants in the form of its customer identities, pricing, and financial data among other such information. Unless enjoined, Defendants will use this information to damage H&E's business, steal its customers and employees, and potentially drive H&E out of business in the Dallas, Harris, and Travis counties markets and possibly others.

55. Individual Defendants are acting as agents of Opifex and for the benefit of Opifex in their use of H&E Confidential Information and the unlawful competition of Individual Defendants.

56. All actions alleged above as to Individual Defendants are alleged as to Opifex, as Individual Defendants are their agents and acting at its direction or for its benefit.

57. Since H&E filed its lawsuit on March 10, 2025, it provided notice of it and its request for injunctive relief. Individual Defendants have not responded. Opifex has retained counsel and Opifex's position is that it is opposed to any setting because it has not been served.

58. Opifex is presently conducting a review of its systems to locate H&E information, which is relief that H&E seeks in its lawsuit and subject to discovery in this lawsuit.

59. H&E has provided appropriate notice to Defendants under the Rules, and therefore consideration of its Application and injunctive relief is appropriate.

60. H&E has satisfied the criteria for obtaining injunctive relief.

It is therefore **ORDERED** that:

1. Individual Defendants, Opifex, and all others acting in concert with them are restrained from directly or indirectly:

    a. Using, disclosing, or further acquiring H&E's trade secrets and other Confidential Information, including its financial data, pricing data/information, or its customer's identities and contact information;

    b. Altering or deleting the contents of any personal or business phones, smart devices, tablets, laptop or desktop computers, email accounts, databases, computer networks, files (physical or electronic), cloud storage systems (e.g., Dropbox, Google Drive), backup devices/systems, external hard drives, servers, or any other type of device or system on which any H&E information has been placed or accessed until a forensic image is made available for analysis;

    c. Soliciting or newly employing H&E's employees who have Confidentiality, Non-Competition, and Non-Solicitation Agreements until further ordered;

    d. Interfering with H&E's contracts with Individual Defendants until further ordered; and

    e. Soliciting or accepting the business of, or call upon, any person or entity who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with H&E, or who was a prospect for a business

relationship with H&E, at any time during the period of Individual Defendants' employment with H&E, or an affiliate of any such person, until further ordered.

2. It is further ordered that Individual Defendants, Opifex, and all others acting in concert with, shall, within 24 hours from the date and time of this Order, produce to or permit access to the below for forensic imaging, copying, and examination by H&E retained forensic computer examiners:

    a. Any and all personal or business phones, smart devices, tablets, laptop or desktop computers, email accounts, databases, computer networks, files (physical or electronic), cloud storage systems (e.g., Dropbox, Google Drive), backup devices/systems, external hard drives, servers, or any other type of device or system on which any H&E information has been placed or accessed; and

    b. Any and all information needed to access the devices and systems responsive to the order in 2.a.

3. H&E shall post a bond with the Clerk in the amount of $ _____.

4. After the bond is posted, the Clerk shall issue this restraining order.

It is so **ORDERED**.

Signed on March _____, 2025, at _____ ___.m., at Houston, Texas.

 

_____
George C. Hanks, Jr.
United States District Judge

13

88699458.v1-OGLETREE